UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEROME REID,

                              **Plaintiff,**                                      5:01-CV-1026

V.

NIAGARA MOHAWK POWER CORPORATION,

                              **Defendant.**
_____

**APPEARANCES:**                                                           **OF COUNSEL:**

Jerome Reid, *Pro se*

Bond, Schoeneck & King, PLLC                                  Robert A. LaBerge, Esq.
One Lincoln Center
Syracuse, NY 13202-1355
For Defendant

Hon. Norman A. Mordue, D.J.:

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Presently before the Court is defendant Niagara Mohawk Power Corporation's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment pursuant to Rule 56. Plaintiff Jerome Reid, who proceeds *pro se*, has not responded to or otherwise opposed defendant's motion.[1] The complaint, filed June

---

[1] Defendant filed the instant motion on July 30, 2004, Dkt. no.65, during the pendency of an interlocutory appeal to the Second Circuit. On August 27, 2004, plaintiff requested additional time to oppose defendant's motion. Dkt. no.68. That same day, the Court advised plaintiff that he would have thirty days after the appeal was decided to file a response to defendant's motion. On September 16, 2004, the Second Circuit dismissed plaintiff's interlocutory appeal. On October 1, 2004, the Court notified plaintiff that opposition papers were due on October 16, 2004. Plaintiff did not file any papers. On April 29, 2005, the Court directed that plaintiff be served with a copy of the "Notice to Pro Se

22, 2001, through counsel, advances six causes of action based on defendant's alleged subjection of plaintiff to a racially hostile work environment (First, Second, and Third Causes of Action), and defendant's alleged failure to promote plaintiff on the basis of race (Fourth, Fifth, and Sixth Causes of Action), in violation of New York Executive Law § 296, 42 U.S.C. § 1981; and 42 U.S.C. § 2000e ("Title VII).

## II.  BACKGROUND

In the complaint, plaintiff alleges the following:

Plaintiff is an African American. Plaintiff has been employed by Defendant since 1985. Plaintiff has experienced a racially hostile environment as an employee of Defendant. The events complained of have continued unabated for the past ten (10) years. On February 2, 1988, Plaintiff filed a complaint with the Division of Human Rights. Plaintiff settled that complaint with Defendant by agreement. Defendant breached that settlement agreement with Plaintiff. On March 29, 1990, Plaintiff filed a complaint with the Division of Human Rights . . . . Defendant did not provide Plaintiff with overtime when other similarly situated employees were permitted overtime. Defendant removed significant job duties from Plaintiff.  In April 1993, Defendant demoted Plaintiff from a grade 18 to a grade 11 position. This demotion violated the settlement agreement between Plaintiff and Defendant. Defendant placed employees with less seniority than Plaintiff in available drafting positions. At the same time, Defendant demoted Plaintiff to an Accounts Payable clerk position. Plaintiff has suffered economically as a result of Defendant's actions.[] Plaintiff has suffered emotionally as a result of Defendant's racially discriminatory behavior.

Complaint, ¶¶18-31 (paragraph numbers omitted).  According to the complaint, prior to filing the instant lawsuit plaintiff separately filed two charges of discrimination with the New York State Division of Human Rights, which are cross-filed with the Equal Employment Opportunity

---

Litigants of the Consequences of Failing to Respond to a Summary Judgment Motion", and granted plaintiff an additional thirty days to serve opposition papers.  Dkt. no.71.  On June 1, 2005, plaintiff requested an extension of time to oppose defendant's motion.  Dkt. no.74.  In an Order dated August 3, 2005, the Court granted plaintiff an additional thirty days to oppose defendant's motion.  Dkt. no.75.  The Court also noted plaintiff's repeated requests for extensions and advised plaintiff that if he failed to oppose defendant's motion, the Court would decide the motion on defendant's papers and that plaintiff's failure to file any opposition could result in dismissal of the action.  *Id*.

Commission ("EEOC"), and received right to sue letters on March 23, 2001, and April 25, 2001.

In connection with its motion for judgment on the pleadings, or, alternatively, for summary judgment, defendant submitted an affidavit by Mary Kay Manns, who is employed by defendant as the Labor Relations Manager. Manns states:

> Niagara Mohawk hired plaintiff Jerome Reid in May 1985. Except for an approximately three-year period between December 1985 and February 1989 when he worked at the Nine Mile Point Nuclear Station, Mr. Reid worked in Niagara Mohawk's office complex in Syracuse, New York. Mr. Reid worked in Niagara Mohawk's Engineering Property Records Department as a Drafting Technician C in November 1993. Mr. Reid remained in that position until March 18, 2002, when he was discharged from employment after an extensive progressive discipline process.
>
> Throughout his Niagara Mohawk employment, Mr. Reid was a member of a bargaining unit represented by Local 97 of the International Brotherhood of Electrical Workers, AFL-CIO, or its predecessor local unions in the Company's Central Division ("IBEW Local 97" or the "Union"). Niagara Mohawk and the Union have been parties to a series of collective bargaining agreements over the years (the "Labor Agreement"). The terms and conditions of employment of bargaining unit employees as Mr. Reid are governed by the provisions of the Labor Agreement and other applicable Niagara Mohawk policies and procedures.
>
> The Labor Agreement sets forth a post and bid procedure for filling vacant positions at Niagara Mohawk. All vacant positions within the bargaining unit are filled pursuant to this post and bid procedure absent a mutual agreement between the Company and the Union to fill a job through some other process or procedure. Since the mid-1990's, when there was a substantial workforce reduction, the Company and the Union have rarely entered into mutual agreements to bypass the post and bid procedure or other normal procedures for filling jobs at Niagara Mohawk.
>
> Pursuant to the post and bid procedure, the Company posts a notice concerning a job vacancy and the necessary qualifications for the position. All bargaining unit members holding regular positions within the Company Division in which the vacancy exists are eligible to express an interest in the position by submitting a bid. After these bids are reviewed and an employee is selected for the job, the Company posts a notice concerning the job award so that the Union and other job bidders are aware of the results of the post and bid procedure.
>
> Under the Labor Agreement, the Company is required to award positions to the senior bidder who possesses the necessary qualifications for the posted position. Any bidder who has greater Company seniority than the person awarded the job and who believes that he or she possesses the required qualifications for the position may file a

grievance under the Labor Agreement concerning the job award.

In my position as Labor Relations Manager, I receive copies of all grievances filed relating to the Company's Central Division operations. I also am the person responsible for responding to all grievances that are not resolved at the initial step of the grievance process. Since I assumed my position as Labor Relations Manager for Niagara Mohawk's Central Division, I am unaware of any position for which Mr. Reid was the senior bidder.

I have reviewed all the grievance records maintained by Niagara Mohawk and have not found any grievance filed by Mr. Reid alleging that he was the senior bidder on a vacant position that he was not awarded. Based upon my personal knowledge and my review of all of the Company's records, I do not believe that Mr. Reid was ever the senior qualified bidder on any job that he did not receive throughout his employment at Niagara Mohawk.

In September 2001, Mr. Reid filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") concerning an independent medical examination that Niagara Mohawk scheduled for him in July 2001. Mr Reid asserted in that charge . . . that "[u]pon information and belief, similarly situated white employees who had similar disabilities were not subjected to this testing." He also asserted that he was not given training that was provided to other employees in his job. Neither of these allegations is true. With respect to Mr. Reid's assertion regarding the independent medical examination, I am aware of many other employees, including several non-minority employees, who were required to attend similar independent medical examinations with the same testing requirements Mr. Reid refused to complete in July 2001. I am personally aware form my handling of various grievances that Mr. Reid filed under the Labor Agreement that Mr. Reid was accorded the same training and training opportunities as the other employees who were performing similar assignments in his work group.

The EEOC investigated the allegations that Mr. Reid raised . . . and issued a Dismissal Notice and Notice of Rights on March 23, 2001, indicating that there was insufficient evidence to support any of Mr. Reid's discrimination allegations.
In addition to the EEOC Charge . . . Mr. Reid filed a complaint with the New York State Division of Human Rights (the "Division") on June 20, 2001 in which he made similar assertions relating to the independent medical examination and training issues raised in the EEOC charge. I also personally participated in the Divisions' investigation into that complaint and a subsequent complaint that Mr. Reid filed with the Division. As did the EEOC, the Division found insufficient evidence to support any of the allegations raised in those complaints and, therefore, issued "no probable cause" determinations dismissing Mr. Reid's complaints based upon those investigations. . . .

In his complaint, Mr. Reid asserts that he was demoted to an Accounts Payable Clerk

4

position in April 1993 and alleges that Niagara Mohawk placed less senior employees in available drafting positions at the same time . . . . [T]here was nothing improper about his placement into the Accounts Payable Clerk position in April 1993 as he previously had been assigned to, and was performing, the work of that position for a considerable time.  I also did not believe that Niagara Mohawk improperly assigned other employees to available drafting positions during that time period.  I similarly do not believe that Mr. Reid bid on the drafting positions that may have been available during that time period.  Finally, Niagara Mohawk did allow Mr. Reid to assume the Drafting Technician C position in Engineering Property Records when he returned to work following a lengthy absence in November 1993.  The Drafting Technician C job is the highest rated position within the drafting job series at Niagara Mohawk.  He remained in that position until his separation from employment in March 2002.

Niagara Mohawk's policies and procedures prohibit all forms of discrimination and harassment based upon race, color, gender, disability, and other protected categories.  The Company's policies prohibit retaliation against any individual who believes that his rights have been violated and who expresses a concern in that regard to Niagara Mohawk management.  Pursuant to these policies, individuals who believe that they have been subject to any discrimination, harassment, or retaliation may express their concern to their supervisor or to members of the Company's Human Resources Department.  If this concern is substantiated after a review or investigation into the matter, Niagara Mohawk will take appropriate corrective measures and/or disciplinary action.  Based upon my personal knowledge and review of Niagara Mohawk records, Mr. Reid never expressed an internal concern relating to an allegedly racially hostile work environment in the Engineering Property Records Department during the three-year period prior to the commencement of this action.

Mann Aff. ¶¶ 2-11; 13-14.

## II. DISCUSSION

### A. Judgment on the Pleadings - Rule 12(c)

Defendants move for judgment on the pleadings pursuant to Rule 12(c).  A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss.  *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  Upon a motion to dismiss pursuant to Rule 12(b)(6), "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff".  *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991).  The Court must dismiss the complaint only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support

5

of his claim which would entitle him to relief.'" *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The first paragraph of the complaint states that "this is an action pursuant to", *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Employee Retirement Income Security Act (ERISA"), 29 U.S.C. § 1001 *et seq.*. None of the six causes of action advanced in the complaint, however, assert claims under either statute. Nor are there any facts alleged in the complaint which would support a cause of action under the FLSA or ERISA.

Although proceeding *pro se* at present, plaintiff filed the complaint through counsel. Even construing the complaint liberally, however, the Court finds the complaint fails to state a claim on which relief can be granted under the FLSA or ERISA because there are no facts asserted in connection with the alleged violations of either statute. Accordingly, to the extent plaintiff intends to advance causes of action pursuant to the FLSA and ERISA, those causes are dismissed without prejudice to repleading for failure to state a claim.

With regard to plaintiffs failure to promote and hostile work environment causes of action, the Court assumes the complaint adequately states claims upon which relief can be granted. Accordingly, defendant's motion for judgment on the pleadings with regard to plaintiff's failure to promote and hostile work environment claims is denied.

**A.     Summary Judgment - Rule 56**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing

the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted). A plaintiff must, however, provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. *Id*.

Defendant moves for summary judgment on a number of grounds, including failure to exhaust administrative remedies, and lack of jurisdiction over New York State claims. Even assuming plaintiff has exhausted his administrative remedies with regard to his federal discrimination claims, because there are no issues of material fact requiring trial, defendant is still entitled to summary judgment.

### 1. Failure to Promote

To evaluate plaintiff's Title VII claims against the Division, the Court applies the three-step, burden-shifting process articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The standards that apply to claims of discrimination in violating of Title VII are also applicable to claims of discrimination in employment under § 1981. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)). To demonstrate a *prima facie* case of discriminatory failure to promote based on race, plaintiff must demonstrate that: "(1) []he is a member of a protected class; (2) []he 'applied and was qualified for a job for which the employer was seeking applicants'; (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach*

*Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  In the second step of the *McDonnell Douglas* test, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999).  The defendant's burden of production is not a demanding one; it need only offer an explanation for the employment decision.  *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).  The burden then shifts back to plaintiff in the third step of the *McDonnell Douglas* process, to demonstrate that the proffered reason was not the true reason for the employment decision, and that gender and pregnancy were.  *See Bickerstaff*, 196 F.3d at 446.

      Having parsed the record, including the complaint, the Court finds that plaintiff fails to sustain his burden.  Here, plaintiff alleges in the complaint that defendant had a pattern and practice of not promoting African-Americans and placed employees with less seniority than plaintiff in available drafting positions.  These allegations are insufficient to establish a *prima facie* case because they are conclusory and fail to identify a specific position for which plaintiff applied and was rejected.  *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004) (holding that to satisfy the second element of a *prima facie* case, the plaintiff must identify a position for which she had "filed a formal application and was rejected", explaining that "evidence that a plaintiff generally requested promotion consideration" was insufficient). Further, Manns, in her affidavit states, that based on her personal knowledge and her review of all of defendant's records that she does "not believe that Mr. Reid was ever the senior qualified bidder on any job that he did not receive throughout his employment at Niagara Mohawk."  Aff. ¶ 8.  Accordingly, defendant's motion for summary judgment dismissing  plaintiff's Title VII and § 1981 failure to promote claims is granted.

### 2. Hostile Work Environment

Defendant seeks summary judgment dismissing plaintiff's claim that he was subjected to a hostile work environment in violation of Title VII and § 1981.  To succeed on this claim plaintiff must establish "(1) that h[is] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of h[is] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Van Zant v. KLM RoyaI Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996); *see also Patterson*, 375 F.3d at 225 (Title VII and § 1981 hostile work environment claims are analyzed under the same standard).  With respect to the first factor, plaintiff must prove both objective and subjective elements, i.e., that the conduct alleged is so severe and pervasive as to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 22 (1993).  With respect to the second factor, "[w]here an employee is the victim of harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."  *Petrosino*, 385 F.3d at 225.

In this case, there is no evidence from which a reasonable jury could conclude that plaintiffs work environment could reasonably be perceived as hostile or abusive.  The allegations in the complaint are conclusory, and contain no facts regarding the specifics of the allegedly discriminatory treatment or facts from which a reasonable jury could conclude that plaintiff suffered a hostile work environment based on race.  For example, the complaint contains allegations that defendant: provided Caucasian employees with overtime and promotions but denied African Americans overtime and promotions; removed significant job

9

duties from plaintiff and demoted plaintiff; and retaliated against plaintiff for filing complaints of discrimination against defendant. The Charge of Discrimination and the two Determinations and Orders after Investigation defendants submitted indicate that plaintiff believed that he was treated differently than similarly situated white employees; did not receive the same training as white employees; and was subjected to unfair terms and conditions of employment based on race, such as being required to submit to a medical examination. Even viewed in the light most favorable to plaintiff, however, these allegations are conclusory, and are therefore insufficient, as a matter of law, to overcome summary judgment. Further, Mann states in her affidavit that "many other employees, including several non-minority employees . . . were required to attend similar independent medical examinations with the same testing requirements Mr. Reid refused to complete in July 2001." Mann Aff. ¶ 9. Mann also states that "Mr. Reid was accorded the same training and training opportunities as the other employees who were performing similar assignments in his work group." *Id*. According to Mann, who reviewed defendant's records, "Mr. Reid never expressed an internal concern relating to an allegedly racially hostile work environment in the Engineering Property Records Department during the three-year period prior to the commencement of this action." *Id*. at ¶14. There is therefore no evidence from which a reasonable fact-finder could conclude that plaintiff suffered a hostile work environment based on race. Accordingly, defendant is entitled to summary judgment as a matter of law dismissing plaintiffs Title VIII and § 1981 hostile work environment claims.

    **C.  State Claims**

Having dismissed all of plaintiffs federal claims and there being no basis for the Court to exercise diversity jurisdiction over the parties, the Court declines to exercise its pendent jurisdiction to entertain plaintiffs remaining state law claims.

V.      CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for judgment on the pleadings dismissing all claims pursuant to the Fair Labor Standards Act and ERISA is **GRANTED**; and it is further

**ORDERED** that the Fair Labor Standards Act and ERISA claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings is otherwise **DENIED**; and it is further

**ORDERED** that defendant's motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that the complaint is **DISMISSED.**

**IT IS SO ORDERED.**

Dated: January 31, 2006

Norman A. Mordue
U.S. District Judge